## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01773-NYW

JULIE LISA MARTS,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

This civil action arises under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) for review of the Commissioner of Social Security Administration's ("Commissioner" or "Defendant") final decision denying Plaintiff Julie Marts's ("Plaintiff" or "Ms. Marts") applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Pursuant to the Parties' consent [#18], this civil action was assigned to this Magistrate Judge for a decision on the merits. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. After carefully considering the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, this court respectfully **REVERSES** the Commissioner's decision and **REMANDS** this matter.

## BACKGROUND

Ms. Marts, born September 13, 1971, alleges she became disabled on or about February 10, 2015, at 43 years-of-age, due to spinal bone spurs, degenerative disk disease, bulging disks,

and chronic pain. *See* [#15-2 at 69; #15-4 at 133-56; #15-7 at 360-72; #15-8 at 418-28, 456-63].[1] Ms. Marts alleged she suffers from constant sharp and aching pain in her neck, shoulders, lower back, and legs, as well as burning pain in her left arm, which most movements exacerbate. *See* [#15-8 at 430-32]. According to Ms. Marts, her constant pain interferes with her ability to work full-time, drive, lift, reach, jog, pull, turn her upper body, perform most physical movement, remain focused, and perform basic hygienic tasks; however, she can do laundry once per week, prepare frozen meals, grocery shop, and utilize public transportation. *See* [*id.* at 431-38].

Ms. Marts applied for SSI and DIB on or about February 24, 2015. *See* [#15-4 at 133-34; #15-7 at 360-72]. The Social Security Administration denied Plaintiff's SSI and DIB applications initially on or about January 15, 2016. *See* [#15-4 at 133-56; #15-5 at 185-95]. Ms. Marts requested a hearing before an Administrative Law Judge ("ALJ"), [#15-5 at 196], which ALJ Debra J. Denney (the "ALJ") held on August 29, 2017, *see* [#15-3; #15-4 at 160; #15-5 at 219-53]. The ALJ similarly denied Ms. Marts's applications for SSI and DIB. *See* [#15-4 at 160-69]. Ms. Marts appealed that decision to the Appeals Council, who remanded the matter to the ALJ to further consider a treating source opinion by Plaintiff's physical therapist and to further evaluate Ms. Marts's residual functional capacity ("RFC"). *See* [*id.* at 176-80]. The ALJ set a further hearing for July 31, 2018, which she later reset for November 9, 2018 to allow Ms. Marts to secure new representation. *See* [#15-2 at 21, 56-63].

At the November 9, 2018 hearing, the ALJ received testimony from Plaintiff and Vocational Expert Jeff Cockrum (the "VE") and admitted additional medical evidence into the

---

[1] When citing to the Administrative Record, the court utilizes the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents the court cites to the document and page number generated by the CM/ECF system.

record.  *See* [*id.* at 21, 63-95].  Ms. Marts testified that she last worked as a bookkeeper and accountant in or about 2014, but she left the job because she could no longer work or "use [her] arms" due to her severe pain.  [*Id.* at 70, 77].  As to her severe pain, Ms. Marts testified that it "hurts to make [her] bed," "do [her] hair," and clean herself after using the restroom; that she can only sit for 15 minutes, stand for 5-10 minutes, and cannot lift heavy objects; and that movement exacerbates her pain.  [*Id.* at 72, 75, 76, 77, 81-82].  Regarding her treatment, Plaintiff attested that she tried physical therapy to no avail, that she now works with a neurologist, and that she takes Ibuprofen for the pain.  [*Id.* at 73, 75-76, 82].

The VE also testified at the November 9, 2018 hearing.  The VE first summarized Ms. Marts's past relevant work as accounting clerk, a specific vocational preparation ("SVP")[2] of 5 and a sedentary exertion level; receptionist, SVP of 4 and a sedentary exertion level; and wedding consultant, SVP of 6 and a light exertion level.  [*Id.* at 85].

The VE then answered several hypotheticals about the work an individual could perform subject to various functional limitations; for each, the VE attested that his testimony with consistent with the Dictionary of Occupational Titles, supplemented by his experience.  [*Id.* at 87-88, 90].  First, the VE testified that an individual, limited to light work, a 10-20-pound lifting restriction, and six hours of standing, walking, and sitting with two-minute stretch breaks, could perform all three of Ms. Marts's past relevant work.  [*Id.* at 85-86].  Second, that a similar individual, further limited to sedentary work, 5-10-pound lifting restriction, and two hours of

---

[2] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991)); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL PROFESSION 163 (Fig. 10-8) (2003).

standing and walking, could perform the jobs of accounting clerk and receptionist. [*Id.* at 86-87]. Third, such an individual, further limited to unskilled work, <u>could not</u> perform any of Ms. Marts's past jobs but could perform the light and/or sedentary unskilled jobs of routing clerk, housekeeping/cleaner, office helper, document preparer, addresser, call-out operator. [*Id.* at 87]. Finally, the VE testified that while employers may tolerate limited public interactions, no employer would tolerate unscheduled 45-minute breaks or outbursts, absences of three times per month, or the need to stand and walk for 15 minutes every hour. *See* [*id.* at 88-89, 90, 92-93].

On January 24, 2019, the ALJ concluded Ms. Marts was not disabled under the Act because, based on her RFC, age, education, and work experience, there existed jobs in the national economy Ms. Marts could perform. *See* [*id.* at 31-33]. Ms. Marts requested Appeals Council review of the ALJ's decision, which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner. *See* [*id.* at 9-12]. Plaintiff, proceeding pro se and *in forma pauperis*,[3] sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on June 19, 2019, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3).

## LEGAL STANDARDS

An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act.

---

[3] Because Ms. Marts proceeds pro se, she is entitled to a liberal construction of her papers. *Smith v. Allbaugh*, 921 F.3d 1261, 1268 (10th Cir. 2019). But the court cannot and does not act as an advocate for a pro se party, and the court applies the same substantive law to pro se litigants as to represented parties. *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019). Nor does a party's pro se status exempt her from complying with the procedural rules that govern all civil actions filed in this District, namely, the Federal Rules of Civil Procedure and the Local Rules of Practice for the District of Colorado. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008)

42 U.S.C. § 423(a)(1). For purposes of DIB, the claimant must prove she was disabled prior to her date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). SSI is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. The earliest a claimant can receive SSI is the month following the month within which the claimant filed her application, and thus the claimant must establish that she was disabled on or prior to her application date. *See* 20 C.F.R. §§ 416.200, 416.335; *see also id.* § 416.912(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application").

An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 13382c(a)(3)(B). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.905. And when a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform her past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's final decision, the court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020) (internal quotation marks omitted); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). "But in making this determination, [the court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

In interpreting her Opening Brief liberally, Ms. Marts's appeal generally challenges whether substantial evidence supports the ALJ's decision, and perhaps more specifically, whether substantial evidence supports the ALJ's RFC assessment given the alleged severity of Ms. Marts's ailments. *See* [#28]. For the following reasons, I respectfully conclude the ALJ erred in assessing Ms. Marts's RFC, which necessitates remand, and thus I focus on this argument exclusively. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

### I.    The RFC Assessment

In formulating a RFC assessment, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). A claimant's RFC is the most work the claimant can perform, not the least. 20 C.F.R. § 404.1545; SSR 83-10. "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")).

The ALJ must also address medical source opinions when formulating a claimant's RFC. *See Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015). The Social Security Regulations afford a treating source opinion more weight than a non-treating opinion if the treating opinion is

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *cf. Garcia v. Colvin*, 219 F. Supp. 3d 1063, 1071 (D. Colo. 2016) ("The distinction between *not inconsistent* and *consistent* is significant. The treating source opinions should not be accorded controlling weight if they contradict other substantial evidence in the record, but they do not necessarily have to reach the exact same conclusions." (emphasis in original)). Indeed, the opinion of a treating or examining source is in no way "dismissable," *see Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012), and may be dismissed or discounted only upon an examination of the factors provided in the regulations and "specific, legitimate reasons for rejecting it[,]" *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). But even if the ALJ does not afford the treating source opinion controlling weight, the ALJ may owe that opinion deference when considering:

1. the length of the treatment relationship and the frequency of examination;
2. the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
3. the degree to which the physician's opinion is supported by relevant evidence;
4. consistency between the opinion and the record as a whole;
5. whether or not the physician is a specialist in the area upon which an opinion is rendered; and
6. other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotation marks omitted). Ultimately, the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the treating source opinion and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted).

But in rendering the RFC assessment, the ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can

determine RFC within that category," so long as the RFC assessment is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004); SSR 96-08p. If substantial evidence supports the RFC assessment, the court will not reverse the ALJ's decision even if it could have reached a different conclusion. *Ellison*, 929 F.2d at 536.

Between steps three and four, the ALJ considered Ms. Marts's RFC. The ALJ concluded Ms. Marts maintained the RFC to perform light work, subject to various limitations on physical and postural requirements. *See* [*id.* at 26-27]. In reaching this conclusion, the ALJ considered Ms. Marts's subjective complaints regarding her ailments and found those allegations "generally persuasive because they are consistent with each other"; however, the ALJ concluded that the medical record, including relevant medical opinions, belied the severity of Ms. Marts's allegations. *See* [*id.* at 27-31].

Ms. Marts argues that she worked until 2015 when she ceased working due to her chronic neck and back pain. *See* [#28 at 2]. Ms. Marts avers that her chronic pain and her additional ailments (i.e., musculoskeletal issues, digestive issues, sciatica, neurological issues, fibromyalgia, seizure disorder, among others) makes it difficult for her to perform most activities, including mundane tasks, and thus she cannot maintain any gainful employment. *See* [*id.* at 2-3, 5-6; #36 at 2-5]. Plaintiff also contends the ALJ impermissibly discounted the opinions of her various treating physicians, which support her functional limitations. *See* [#28 at 2-3, 6; #36 at 3-5]. The Commissioner counters that the ALJ adequately considered the relevant medical evidence concerning Plaintiff's neck and back pain, which included largely normal exam findings and hints of malingering, and the ALJ properly weighed the medical source opinions. *See* [#34 at 12-18].

For the following reasons, I respectfully disagree with the Commissioner and conclude remand is appropriate.

The ALJ's RFC assessment contains a thorough discussion of the relevant medical record regarding Ms. Marts's degenerative disc disease, as well as a reference to her substance abuse, and discusses the weight assigned to various medical opinions. *See* [#15-2 at 27-31]. Noticeably absent from this discussion, however, is any mention of Ms. Marts's <u>non-severe</u> impairments, such as her fibromyalgia, her right shoulder strain, seizures, and acute gastrointestinal illnesses, among others.[4] *See generally* [#15-10 through #16-24]. This omission precludes this court from concluding that substantial evidence supports the ALJ's RFC assessment. *See Ellison*, 929 F.2d at 536.

As mentioned, the ALJ must consider all medically determinable impairments, whether severe or not, when assessing a claimant's RFC. *See Ray*, 657 F. App'x at 734. "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron*, 767 F.3d at 954 (quoting SSR 96-8p, 1996 WL 374184, at *7). "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7. Of particular importance here, "a conclusion that the claimant's [] impairments are non-severe at step two does not permit the

---

[4] While the ALJ's RFC assessment does not contain a robust discussion of Ms. Marts's mental limitations, the ALJ thoroughly considered those mental impairments at step two and concluded both at step two and the RFC assessment that these mental ailments limited Ms. Marts to unskilled work. *See* [#15-2 at 24, 30]. In this instance, the court concludes the ALJ undertook the requisite mental RFC assessment apart from her step two finding. *See Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013).

ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells*, 727 F.3d at 1068-69.

In the ALJ's decision dated January 24, 2019, as well as her decision dated November 28, 2017, *see* [#15-4 at 160-69], there is no further discussion of Ms. Marts's non-severe ailments in the RFC assessment. *Compare* [#15-2 at 27-31] *with* [#15-4 at 164-67]. Rather, both decisions discuss Ms. Marts's non-severe ailments during the step two analysis, without any indication that the ALJ also considered those non-severe ailments and their attendant limitations, if any, on Ms. Marts's RFC. *See Walling v. Berryhill*, 370 F. Supp. 3d 1306, 1311-12 (W.D. Okla. 2019) ("The Court agrees that the ALJ's discussion in this case reflects the type of conflation of the step-two and step-four analyses criticized in *Wells*. . . . In fact, the ALJ failed to engage in any analysis of mental functions or Plaintiff's nonsevere mental impairment in his RFC discussion, limiting the discussion, instead, solely to Plaintiff's severe impairments."). This is particularly troublesome given the sheer magnitude of medical evidence documenting Ms. Marts's non-severe ailments. *See generally* [#15-10; #15-11; #15-12; #15-13; #15-14; #15-15; #15-16; #15-17; #15-18; #15-19; #15-20; #15-21; #15-22; #15-23; #16; #16-1; #16-2; #16-3; #16-4; #16-5; #16-6; #16-7; #16-8; #16-9; #16-10; #16-11; #16-12; #16-13; #16-14; #16-15; #16-16; #16-17; #16-18; #16-19; #16-20; #16-21; #16-22; #16-23; #16-24].

To be sure, some of the relevant medical evidence concerns Ms. Marts's degenerative disc disease, which the ALJ discusses at length. But noticeably absent from that discussion is any mention of the wealth of medical evidence concerning Ms. Marts's non-severe impairments and what, if any, limitations those non-severe ailments pose on Ms. Marts's functionality. While the court will uphold an ALJ's determination if it is supported by substantial evidence, the ALJ "must consider all relevant medical evidence in making those findings," and thus "in addition to

11

discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (quotation marks omitted, citing and quoting *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) and *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)); *Zambrano v. Berryhill*, No. 1:17-CV-00672-KRS, 2018 WL 4350252, at *5 (D.N.M. Sept. 12, 2018) ("[I]t is incumbent upon the ALJ to fairly consider all of the relevant evidence in the record, and to discuss the uncontroverted evidence she chooses not to rely on as well as significantly probative evidence she rejects. The ALJ may not simply ignore relevant evidence that suggests an opposite conclusion."). And given the amount of medical evidence not considered, the court cannot find this omission constitutes harmless error. *See Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (explaining that courts "may employ a harmless-error analysis sua sponte on appeal when . . . the record is not overly long or complex, harmlessness is not fairly debatable, and reversal would result in futile and costly proceedings."). Without any further discussion of Ms. Marts's non-severe ailments during the RFC assessment, the court cannot conclude substantial evidence supports the ALJ's decision.

## CONCLUSION

For the reasons stated herein, the court respectfully **REVERSES** the Commissioner's final decision and **REMANDS** this matter to the ALJ for further consideration consistent with this Memorandum Opinion and Order.

DATED: July 20, 2020                              BY THE COURT:

                                                  _____
                                                  Nina Y. Wang
                                                  United States Magistrate Judge